IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF OREGON

ELIZABETH RIVERA                          CV 05-1431-MA

       Plaintiff,                         OPINION AND ORDER

v.

JO ANNE B. BARNHART,
Commissioner of Social
Security,

       Defendant.


BRUCE W. BREWER
419 5th Street
Oregon City, OR 97045
(503) 722-8833

       Attorney for Plaintiff

KARIN J. IMMERGUT
United States Attorney
NEIL J. EVANS
Assistant United States Attorney
1000 S.W. Third Avenue, Suite 600
Portland, OR  97204-2902
(503) 727-1053


1 - OPINION AND ORDER

JOANNE E. DANTONIO
Special Assistant United States Attorney
701 Fifth Avenue, Suite 2900 MS/901
Seattle, WA  98104-7075
(206) 615-2730

      Attorneys for Defendant

MARSH, Judge.

     Plaintiff Elizabeth Rivera filed this action for judicial review of a final decision of the Commissioner denying both her September 28, 2000, application for disability insurance benefits and her June 11, 2001, application for supplemental security income benefits (benefits), which she made pursuant to Titles II and XVI of the Social Security Act, 42 U.S.C. §§ 401-33 and 42 U.S.C. §1381-83f, respectively.

     On the date of the Commissioner's final decision, plaintiff was 37 years old.  She has one year of college.  Plaintiff's past relevant work was as a certified nursing assistant, deli-worker/manager, and warehouse laborer.  She also worked as a motel maid, but the brief length of time she worked in that job does not qualify it as "past relevant work."

     Plaintiff claims she has been disabled since March 28, 2000, because of asthma, rheumatoid arthritis, constant back pain, low immune system, fatigue, and nausea.

     The Administrative Law Judge (ALJ) held a hearing on January 14, 2003, and a supplemental hearing on June 16, 2003, to

address the results of additional testing requested by plaintiff.

On August 25, 2003, the ALJ found plaintiff was not disabled and, therefore, was not entitled to an award of benefits. The Commissioner affirmed the ALJ's decision on appeal. Plaintiff now seeks an order from this court reversing the Commissioner's decision and remanding the case for an award of benefits. The Commissioner contends her decision is based on substantial evidence, is free from legal error and, therefore, the court should affirm her decision denying benefits.

This court has jurisdiction under 42 U.S.C. § 405(g). For the following reasons, the court AFFIRMS the final decision of the Commissioner and DISMISSES this action.

## THE ALJ'S FINDINGS

The Commissioner has developed a five-step sequential inquiry to determine whether a claimant is disabled. Bowen v. Yuckert, 482 U.S.137, 140 (1987). See also 20 C.F.R. § 404.1520. Plaintiff bears the burden of proof at Steps One through Four. See Tackett v. Apfel, 180 F.3d 1094, 1098 (9th Cir. 1999). Each step is potentially dispositive.

At Step One, the ALJ found plaintiff had not engaged in substantial gainful activity since the alleged onset of her disability on March 28, 2000.

At Step Two, the ALJ found plaintiff has impairments of rheumatoid arthritis, low back pain, and depression, that are

3 - OPINION AND ORDER

severe under 20 C.F.R. §§404.1520(c) and 404.920(c)(an impairment or combination of impairments is severe if it significantly limits an individual's physical or mental ability to do basic work activities).

At Step Three, the ALJ found plaintiff's impairments did not meet or equal "the requisite criteria for any listings" as set forth in 20 C.F.R. §§ 404.1520(a)(4)(iii) and (d) and 404.920(a)(4)(iii).

The ALJ found plaintiff had the residual functional capacity to perform a "full or wide range of Light exertion" with occasional Postural non-exertional limitations," which include lifting and carrying up to 20 pounds occasionally and 10 pounds frequently, sitting, standing, and walking up to six hours in a normal eight-hour work day with normal breaks, pushing and pulling the same weights she can lift and carry, and climbing, balancing, stooping, kneeling, crouching, or crawling, occasionally.

At Step Four, the ALJ found plaintiff was unable to perform any of her past relevant work.  20 C.F.R. §§ 404.1520(a)(4)(v) and 404.920(a)(4)(v).

At Step Five, the ALJ found plaintiff is able to perform other work that exists in significant numbers in the regional and national economy, including the jobs of motel maid, service

station attendant, and parking lot cashier/attendant.

Consistent with the above findings, the ALJ found plaintiff was not under a disability and denied her claim for benefits.

On June 22, 2005, the Appeals Council's affirmation of the ALJ's decision became the final decision of the Commissioner for purposes of judicial review.

## LEGAL STANDARDS ON JUDICIAL REVIEW

The initial burden of proof rests on the claimant to establish disability. Roberts v. Shalala, 66 F.3d 179, 182 (9th Cir. 1995), cert. denied, 517 U.S. 1122 (1996).  To meet this burden, a claimant must demonstrate the inability "to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which . . . has lasted or can be expected to last for a continuous period of not less than 12 months."  42 U.S.C § 423(d)(1)(A).

The district court must affirm the Commissioner's decision if it is based on proper legal standards and the findings are supported by substantial evidence in the record as a whole. 42 U.S.C. § 405(g).  "Substantial evidence means more than a mere scintilla but less than a preponderance; it is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." Andrews v. Shalala, 53 F.3d 1035, 1039 (9th Cir. 1995).

5 – OPINION AND ORDER

The court must weigh all of the evidence whether it supports or detracts from the Commissioner's decision. Martinez v. Heckler, 807 F.2d 771, 772 (9th Cir. 1986). The Commissioner's decision must be upheld, however, even if the "evidence is susceptible to more than one rational interpretation." Andrews, 53 F.3d at 1039-40.

The Commissioner bears the burden of developing the record. DeLorme v. Sullivan, 924 F.2d 841, 849 (9th Cir. 1991). The duty to further develop the record, however is triggered only when there is ambiguous evidence or when the record is inadequate to allow for proper evaluation of the evidence. Mayes v. Massanari, 276 F.3d 453, 459-60 (9th Cir. 2001).

The decision whether to remand for further proceedings or for immediate payment of benefits is within the discretion of the court. Harman v. Apfel, 211 F.3d 1172, 1178 (9th Cir.), cert. denied, 121 S. Ct. 628 (2000). "If additional proceedings can remedy defects in the original administrative proceeding, a social security case should be remanded." Lewin v. Schweiker, 654 F.2d 631, 635 (9th Cir. 1981).

## DISCUSSION

Plaintiff contends the ALJ improperly (1) rejected plaintiff's testimony regarding her symptoms, (2) rejected lay witness testimony regarding plaintiff's symptoms, (3) rejected

the findings of examining physicians that plaintiff suffered from fibromyalgia, (4) rejected the primary treatment provider's opinion as to disability, (5) failed to consider the effects of plaintiff's cognitive and personality disorders on her ability to work, and as a consequence of all of the above, (6) gave a hypothetical to the vocational expert (VE) that was not based on plaintiff's "verifiable" exertional and non-exertional limits.

Based on these alleged errors, plaintiff seeks an order remanding this case to the ALJ for an award of benefits because further proceedings are unnecessary and, therefore, would be wasteful.

### PLAINTIFF'S CREDIBILITY

The overarching issue is whether the record supports the ALJ's finding that plaintiff's description of the severity of her impairments, both physical and mental, and their impact on her ability to engage in light work, was not credible. Tr. 40. The remaining issues in this case are largely resolved depending on the validity of this finding.

For the reasons that follow, I find the ALJ's finding that plaintiff was not credible is valid.

**A.    <u>Standards for Determining Credibility</u>.**

A claimant who alleges disability based on subjective symptoms "must produce objective medical evidence of an

underlying impairment 'which could reasonably be expected to produce the pain or other symptoms alleged. . . .'" (the Cotton test).  Bunnell v. Sullivan, 947 F.2d 341, 344 (9th Cir. 1991) (quoting 42 U.S.C. § 423(d)(5)(A) (1988)).  See also Cotton v. Bowen, 799 F.2d 1403, 1407-08 (9th Cir. 1986).  A claimant need not produce objective medical evidence of the symptoms or their severity.  Smolen v. Chater, 80 F.3d 1276, 1281-82 (9th Cir. 1996).

If a claimant produces objective evidence that underlying impairments could cause the pain she complains of and there is no affirmative evidence to suggest the claimant is malingering, the ALJ must provide clear and convincing reasons for rejecting plaintiff's testimony regarding the severity of her symptoms.  Dodrill v. Shalala, 12 F.3d 915, 918 (9th Cir. 1993). See also Smolen, 80 F.3d at 1283.  To determine whether plaintiff's subjective testimony is credible, the ALJ may rely on (1) ordinary techniques of credibility evaluation such as the claimant's reputation for lying, prior inconsistent statements concerning the symptoms, and other testimony by the claimant that appears less than candid; (2) an unexplained or inadequately explained failure to seek treatment or to follow a prescribed course of treatment; and (3) the claimant's daily activities. Id. at 1284 (citations omitted).

8 - OPINION AND ORDER

B.    __Plaintiff's Testimony__.

At the first hearing, plaintiff testified that by 1999 she was unable to work because of pain in her arms, lower back, mid-back, neck, buttocks, outside legs, and feet, all of which prevents her from picking her arms up over her head, lifting anything heavy, and walking more than short distances, _e.g._, one area of a building to another area of the same building, before she needs to sit down.  Tr. 449-450.

On a scale of 1-10, 10 being the most severe, plaintiff stated her pain level averages 6, but increases to 10 "four or five" days a week, and on those occasions, she cannot get out of bed.  _Id_. at 450-451.  She takes numerous pain medications, including vicodin (hyrocodone), morphine sulphate, and neurotin. The vicodin helps plaintiff's pain level to remain at 4 until she walks or sits/lays down for too long, when the pain level will increase.  _Id_. at 452.  Plaintiff has not always taken her pain medication as prescribed and on occasion has sought to refill the prescriptions before the refill dates.  Her treating nurse practitioner, Claudia Carlson, N.P,, refused to allow that practice.  _Id_. at 454-455.  Plaintiff states she has stomach sickness and vomits everyday, all morning long, because of the medication.  She believes she is addicted to morphine but no physician has told her so.  Tr. 453-454.  She planned to visit a pain clinic the month following the second hearing.  _Id_.

9 - OPINION AND ORDER

Plaintiff testified her eye doctor told her she has glaucoma because she "can't see at night," has "blurred vision" and "very bad headaches." According to her doctor, she "needs to see a specialist. Nevertheless, she has a drivers license and continues to drive. Id. at 459. She does not take medication for her eye condition. Id. There is no support in the record for this claim, and plaintiff did not assert glaucoma as a disabling condition in her application for benefits.

C. **Relevant Medical Evidence.**[1]

Plaintiff acknowledges "[b]ecause of her complex etiology, doctors have struggled with her prognosis and treatment. In addition, her personality disorder, marked by prominent pain behaviors and difficulties understanding, has further complicated her diagnosis and treatment." Pl.'s Mem. at 2-3.

A review of the medical evidence, however, reflects medical providers have struggled with prognosis and treatment because of concerns regarding plaintiff's exaggeration of her pain level and likely malingering.

1. **Treating/Examining Practitioners.**

Nurse Practitioner, Claudia Carlson, N.P., was plaintiff's primary care provider from 2000 until January 2003, when she

---

[1] The medical records address a number of impairments, some of which are not relevant to the disability determination. Irrelevant medical issues are not discussed in this Opinion and Order.

terminated her treating relationship with plaintiff.  During that period, she referred plaintiff to several medical practitioners. The medical reports are summarized below.

    a.  <u>Nurse Carlson</u>.

In September 2001, Nurse Carlson offered the opinion that plaintiff was unable to work because of "pain in all of her joints, back, shoulders, wrists, fingers, metatarsal joints of her feet, and ankles."  Nurse Carlson noted plaintiff has difficulty sitting for more than half an hour, standing for more than five minutes, walking more than 15 feet, and carrying more than five pounds.  Tr. 292.

Nurse Carlson ordered a "whole body bone scan" in May 2001, which revealed arthritis and or other inflammatory condition in both knees and both ankles and feet."  Tr. 406.  In response to plaintiff's complaint of back pain, Nurse Carlson also requested diagnostic radiology tests between July and November 2001, which revealed mild spondylolisthesis at L4-5, mild degenerative changes at L2-3 and L3-4, and "no significant abnormality" in the pelvis and left hip.  Tr. 298-300.

In September 2002, plaintiff complained of "severe exacerbation of pain in her joints" and told Nurse Carlson she had used all her vicodin for the month.  She "cried and moaned during the visit."  There was "obvious swelling over both knee caps."  Nurse Carlson assessed rheumatoid arthritis, and noted

11- OPINION AND ORDER

plaintiff had not responded well to previous arthritis
medications" and had "lost her relationship with her previous
rheumatologist."  Tr. 396.  Nurse Carlson prescribed additional
vicodin even though it "breaks the narcotic contract with her."
Id.

One month later, plaintiff again complained of total
body pain, and was abusive, confrontational, and angry with staff
when told that her vicodin prescription could not be refilled on
that date under the terms of her narcotics contract.

In November and December 2002, plaintiff again reported
total body pain.  Nurse Carlson noted the "familiar refrain," and
also noted plaintiff "pleads" for additional vicodin.  Nurse
Carlson assessed "total body pain with significant opioid
dependence."  Tr. 392.

According to plaintiff, in January 2003, Nurse Carlson
refused to continue as plaintiff's treatment provider after
another incident when plaintiff attempted to obtain narcotic
medication (morphine) before the prescribed date.  Tr. 428.

b.  Physiatrist Gary A. Ward, M.D.

In May 2001, Dr. Ward examined plaintiff at the request
of Nurse Carlson.  Plaintiff described "pain everywhere."  Dr.
Ward found "multiple" pain behavior, in which plaintiff moved
"very slowly and carefully" and "verbalize[d] discomfort in a
wide variety of ways."  Tr. 280.  Dr. Ward assessed objective

12- OPINION AND ORDER

chronic pain in the ankle and foot, lower extremity, low back, thoracic region, neck, shoulder, and upper extremity.  He diagnosed rheumatoid arthritis, although there was no sign of synovitis (joint inflammation).  Tr. 281.  In addition, however, Dr. Ward noted "objective examination of this patient is impossible on examination with almost every validity test being abnormal."  Tr. 282.

     c.  <u>Rheumatologist Ronald C. Fraback, M.D.</u>

Dr. Fraback initially examined plaintiff at the request of Nurse Carlson in April 2000.  The physical examination revealed mild discomfort with rotation of the neck, some tenderness to palpation over the lower thoracic and mid-lumbar spine, occasional complaint of back spasms, tenderness anteriorly in the shoulders lacking a few degrees of full motion in all directions, hand and wrist tenderness, and negative findings in the elbows, hips, knees, ankles, and feet.  Dr. Fraback diagnosed rheumatoid arthritis with little evidence of synovitis, based on history, back pain, presumably mechanical, obesity, and questionable pituitary disorder.  Tr. 322-323.

Dr. Fraback examined plaintiff again on approximately 10 occasions through October 2001.  During those examinations, she showed tenderness in different areas of her body.  In August 2001, Dr. Fraback assessed rheumatoid arthritis, symptomatically improving.  Tr. 326.  In his final examination,

he assessed rheumatoid arthritis with little evidence of active
disease.  Tr. 325.

> d.  Rheumatologist Anita Goel, M.D.

Dr. Goel, an associate of Dr. Fraback, examined
plaintiff in October 2003 because of plaintiff's complaints,
primarily, of pain and exhaustion.  Dr. Goel concluded plaintiff
has "chronic pain syndrome/fibromyalgia" and found no evidence of
rheumatoid arthritis because plaintiff does not have synovitis.
Tr. 377.  Dr. Goel noted plaintiff "has a very poor understanding
of her medical problems and is likely to do poorly with numerous,
unexplained complaints."  Id.

> e.  Neurologist Todd R. DeVere, M.D.

In August and November 2002, Dr. DeVere examined
plaintiff at Nurse Carlson's request after plaintiff complained
of two brief seizure episodes.  Dr. DeVere assessed "possible
seizures" after giving plaintiff "the benefit of the doubt"
because of her subjective history of childhood seizures.  Tr.
373.  As a result, he prescribed neurontin.

> f.  Rheumatologist Wai Lee, M.D.

Dr. Lee examined plaintiff in June 2003.  He found
plaintiff had "prominent myofascial pain on palpation of all 18
out of 18 points for fibromyalgia," leading him to "suspect that
the patient has underlying fibromyalgia which explains her
chronic pain syndrome."  Tr. 441.  Dr. Lee doubted plaintiff has

14- OPINION AND ORDER

rheumatoid arthritis, finding "no overt evidence of joint inflammation," _i.e._, synovitis.  _Id._

**2.  Examining/Consulting Physicians.**

At the request of the Commissioner, several physicians examined plaintiff and/or reviewed her medical records in connection with her disability claim,

a.  <u>Examining Physician Tatsuro Ogisu, M.D.</u>

Dr. Ogisu performed a comprehensive orthopedic examination at the request of the Commissioner in November 2001, and again in February 2003, after the first hearing.  In November 2001, Dr. Ogisu acknowledged the history of rheumatoid arthritis, but noted, as had other doctors, there was no sign of synovitis. His impression was "low back pain" with "probable right sacroiliac dysfunction, and mild degenerative changes which probably do not account for any of her pain."  Tr. 344.  Dr. Ogisu also noted "prominent pain behaviors limit assessment of her pain," and that "[a] few minutes after the exam [plaintiff] was observed rounding a corner and walking vigorously down a hallway.  It would seem that her overt level of pain during the exam had subsided."  <u>Id.</u>  Dr. Ogisu found the assessment of plaintiff's functional limitations "is limited by her pain behaviors," but in regard to plaintiff's assertion she can only walk "less than 50 feet,"  Dr. Ogisu remarked "[c]learly, she is able to walk more than 50 feet without difficulty."  Tr. 344.

In February 2003, upon reexamination, Dr. Ogisu found "chronic pain syndrome. Limited exam due to prominent pain behaviors." Tr. 418. He also found "probable fibromyalgia" and trigger points suggestive of a "myofascial pain syndrome." Tr. 418.

b. Examining Psychologist Joe Wood, Psy.D.

In December 2001, Dr. Wood performed a psychodiagnostic examination of plaintiff at the request of the Commissioner in regard to her complaints of depression and her pain behavior. Dr. Wood found her presentation was "dramatic and overdone. She teared as much as any client who has reported pain and squirmed more than any client he has ever evaluated regarding pain." Tr. 347. He performed a "Test of Memory Malingering (TOMM)." The scores on one part of the test demonstrated "chance responding" that "may be indicative of malingering." Dr. Wood's diagnostic impressions included "R/O malingering" and "R/O Major Depressive Disorder."

c. Examining Psychologist Robinann Cogburn, Ph.D.

Dr. Cogburn examined and tested plaintiff at the request of the Commissioner in February 2003, having previously examined plaintiff in October 2001. Plaintiff stated she suffered from pain, fatigue, depression, and limited mobility, essentially the same complaints she had on the first examination.

Plaintiff described her daily activities, which

16- OPINION AND ORDER

included some household chores such as stacking dishes for
washing, vacuuming the living room floor, both of which she does
slowly.  Plaintiff is able to drive.  She shops at the grocery
store, using a scooter to move around.

Dr. Cogburn noted the "somewhat dramatic quality" of
plaintiff's presentation:

> [Plaintiff] made little grunting and sighing
> sounds, moved slowly, and sometimes stated
> she could no longer sit still and stood up to
> stretch or move around the room.  She
> complained of pain and rubbed her face and
> hands from time to time.  Her pain behaviors
> observably increased when discussion focused
> upon pain issues and functional limitations.
> Her pain behaviors tended to decrease when
> she was occupied with unrelated tasks.
> [Plaintiff's] posture and motion were
> generally within normal limits, aside from
> her pain behavior.

Tr. 429.

Dr. Cogburn administered the same TOMM test given by
Dr. Woods, as well as the WAIS-III intellectual functioning test,
and the MMPI-2 test.  Plaintiff's scores on the TOMM test raised
serious questions regarding plaintiff's motivation, and were
consistent with possible malingering.  Her scores on the WAIS-III
were slightly lower than the previous scores plaintiff achieved
in prior testing and were consistent with reduced motivation.
The results of the MMPI-2 tests suggested "some degree of
exaggeration of symptoms."  Such results are consistent with
persons who are "suspicious and angry."  Id. at 432.

Dr. Cogburn's diagnoses included "rule out malingering, rule out depressive disorder, rule out somatization disorder, [and] prescribed opioid dependence." <u>Id.</u>  In addition, Dr. Cogburn diagnosed personality disorder, NOS, with borderline paranoid features.  She concluded that "evidence of exaggeration of symptoms made it difficult to assess the actual nature and extent of problems in the areas of somatoform disorder and depression." <u>Id.</u>  She found "no evidence of cognitive impairment, . . . [v]alidity testing was consistent with possible malingering . . ., and plaintiff's greatest impairment actually appears to be in her social functioning.  Her difficulties in this area likely arise from her personality disorder." <u>Id.</u>

      d.  <u>Consulting Psychologists Frank Lahman, Ph.D.</u>
           <u>and Robert Henry, Ph.D.</u>

These psychologists reviewed plaintiff's medical records in December 2001, and found plaintiff's mental impairments, if any, were not severe.  Their diagnoses included "R/O Depression" and "R/O Malingering." Tr. 350.  In rating plaintiff's functional limitations, Dr. Lahman and Dr. Henry concluded plaintiff has mild restrictions as to daily living activities, mild difficulties in maintaining social functioning, and mild difficulties in maintaining concentration, persistence, or pace.  Tr. 360.

      e.  <u>Consulting Internist Sharon Eder, M.D.</u>

Dr. Eder reviewed plaintiff's medical records in

December 2001, and found plaintiff's physical impairments limited her to occasionally lifting 50 pounds, frequently lifting 25 pounds, and standing, walking, and/or sitting about 6 hours in an 8-hour day. Dr. Eder found no postural, manipulative, visual, communicative, or environmental limitations. Tr. 365-368. She noted the "very poor credibility of plaintiff's statements and presentation," and that plaintiff's "function is limited by pain behavior, not by objective findings." Tr. 369-370.

**D.    Conclusion.**

On this record, I find there is substantial evidence to support the ALJ's finding that plaintiff is not a credible witness. There is evidence of malingering and significant exaggeration by plaintiff of the extent of her pain and her functional limitations. The ALJ, therefore, was not required to give clear and convincing reasons for rejecting plaintiff's testimony. Dodrill, 12 F.3d at 918. Nevertheless, the ALJ did set forth in clear and convincing detail his reasons for doing so. They included a recitation of the observations of the medical practitioners described above, which are not repeated, and his own observations during the hearings, where he noted plaintiff "was very histrionic in her gait, crying the whole time." Tr. 36.

## LAY WITNESS CREDIBILITY

Plaintiff contends the ALJ impliedly rejected lay witness

testimony regarding plaintiff's pain complaints by ignoring their statements in his opinion.  The record reflects two lay witnesses, niece Joni Lynn Mills and friend Kelli Murrain, wrote letters on plaintiff's behalf but did not testify.  Mills wrote, inter alia, plaintiff "is in pain all the time no matter what she does . . . [and] cant (sic) walk, stand, sit, or even sleep because she is in so much pain." Tr. 203-205.  Murrain wrote, inter alia, "[plaintiff] is in constant pain from her back and swollen joints and is barely able to walk across the room." Tr. 20.

An ALJ is "required to consider and comment upon the uncontradicted lay testimony." Stout v. Commissioner, 454 F.3d 1050, 1053 (9th Cir. 2006)(emphasis added).  Here, the two lay witness did not testify, nor were their observations of plaintiff's pain behavior uncontradicted in light of the competent medical sources who observed plaintiff and found her pain behaviors to be "exaggerated" and "dramatic," and in the case of Dr. Ogisu, actually observed plaintiff's ability to walk greater distances than she claims without any apparent difficulty.

I find the ALJ did not err in failing to comment on the lay witness letters.

### FIBROMYALGIA DIAGNOSIS

Plaintiff asserts correctly the ALJ found plaintiff

20 - OPINION AND ORDER

suffers from rheumatoid arthritis rather than fibromyalgia.  As

noted above, this finding is inconsistent with most of the later

medical opinions of examining physicians because of the absence

of any significant joint inflammation.  The Commissioner concedes

the inconsistency but argues if the ALJ erred, the error is

harmless.  See Batson v. Commissioner, 359 F.3d 1190, 1197 (9th

Cir. 2004).  I agree.  Plaintiff's credibility regarding the

severity of her pain and its impact on her residual functional

capacity is the critical issue, not whether the condition causing

the pain is fibromyalgia or rheumatoid arthritis.

### NURSE CARLSON'S DISABILITY OPINION

Plaintiff asserts the ALJ improperly rejected Nurse

Carlson's opinion regarding plaintiff's ability to work.  In his

opinion, the ALJ noted Nurse Carlson was not an acceptable

medical source unless her opinions were "signed off on by a

medical doctor."  Tr. 34. See 20 C.F.R. §404.1527(a)(2).  There

is nothing in the record reflecting Nurse Carlson's opinion as

to plaintiff's ability to work was signed off by a medical

doctor.

I agree the ALJ erred in rejecting Nurse Carlson's opinion

on the severity of plaintiff's impairments and their effect

on her ability to work solely because Nurse Carlson is not an

"acceptable medical source."  See 20 C.F.R. §404.1513(d)(1)

(evidence from other sources, including nurse practitioners, may

be used to show the severity of impairment(s) and how it affects the ability to work).  Nevertheless, based on the substantial evidence in the record that plaintiff significantly exaggerated the extent of her pain on which Nurse Carlson's opinion was based, I conclude the error was harmless.  It is particularly noteworthy that (1) Nurse Carlson's opinion was given in September 2001, before Dr. Ogisu, Dr. Wood, Dr. Cogburn, and Dr. Eder examined plaintiff and/or reviewed her medical records and raised concerns regarding her exaggerated pain behavior and possible malingering, and (2) Nurse Carlson terminated her relationship with plaintiff because of pain medication issues.

### PLAINTIFF'S COGNITIVE AND PERSONALITY DISORDERS

Plaintiff alleges the ALJ erred in failing to consider her cognitive and personality disorders.  Plaintiff, however, never asserted those disorders as bases for her disability claim.  The only mental impairment she raised during the claim process was her depression, which Nurse Carlson described as severe, "with impaired concentration, agitation, trouble remembering events." Tr. 292.  The ALJ considered her depression and found it to be a severe impairment but non-disabling impairment when considered with her other impairments.

The record reflects issues relating to alleged cognitive and personality disorders arose only after the ALJ ordered further psychiatric testing during the course of the first hearing in

this case.  As a result, Dr. Cogburn conducted the battery of
tests described above and found no evidence of cognitive
impairment.  She did diagnose a personality disorder resulting in
difficulties in social functioning and completed a Mental
Residual Functional Capacity Form in which she concluded
plaintiff would have "moderate" restrictions interacting
appropriately with supervisors and co-workers, and responding
appropriately to work pressures and changes in a routine work
setting.

Contrary to plaintiff's assertion, the ALJ addressed these
findings by Dr. Cogburn and gave them no weight, citing Dr.
Cogburn's admitted difficulties in assessing plaintiff's
impairments because of exaggeration and "alcohol and/or substance
abuse [that] may contribute to her difficulties."  Tr. 33.

I find the ALJ gave clear and convincing reasons for
rejecting Dr. Cogburn's assessment of plaintiff's mental
functional limitations

### HYPOTHETICAL TO VOCATIONAL EXPERT

Plaintiff asserts the ALJ erred by failing to include in his
hypothetical to the Vocational Expert (VE) the disabling effects
of fibromyalgia and the impact from the side effects of the
medications taken.  The ALJ's hypothetical to the VE included
the physical functional limitations substantiated by the record,
taking plaintiff's exaggeration of pain behavior into account.

Those limitations include occasional lifting and frequent lifting of up to 20 pounds, standing and walking up to six hours in an eight hour day, pushing and pulling within the above weight limits, and occasionally climbing, balancing, stooping, kneeling, crouching, and crawling.  Tr. 36, 474.

I find the functional limitations described in the ALJ's hypothetical to the VE are supported by the record as a whole, whether those limitations were based on an erroneous diagnosis of rheumatoid arthritis or fibromyalgia.  In addition, I find the ALJ did not err in failing to include in the hypothetical the side affects of pain medication, which plaintiff used improperly and excessively, and which was prescribed based on plaintiff's dramatic presentation of pain behavior that was exaggerated according to many of the accepted medical sources who examined her.

<u>**CONCLUSION**</u>

For all the reasons stated above, the court AFFIRMS the final decision of the Commissioner and DISMISSES this action.

IT IS SO ORDERED.

DATED this 13 day of November, 2006.

    /s/  Malcolm F. Marsh
MALCOLM F. MARSH
United States District Judge

24 - OPINION AND ORDER

25 - OPINION AND ORDER